291 S.E.2d 466

**Cecil POWERS, et al.**

v.

**James R. GOODWIN, et al.**
**(Two cases).**

**Nos. 15445, 15446.**

Supreme Court of Appeals of
West Virginia.

May 17, 1982.

William L. Jacobs, Parkersburg, for appellants in 15445 and appellees in 15446.

Peter A. Hendricks, Madison, for appellees in 15445 and appellants in 15446.

NEELY, Justice:

We have before us a case involving alleged official misconduct that raises complex issues about the payment of attorneys' fees by a local fiscal body when actions are brought against members or employees of that body in their official capacity. This case is important because we have not previously spoken in West Virginia to the issue of attorneys' fees incurred in litigation arising from the performance of official duties.

This is an appeal from an order of the Circuit Court of Boone County in a case where plaintiffs below, Cecil Powers, etc., sought to remove defendants below, James R. Goodwin, Ed Cooke, and James W. Armstrong from the County Commission of that county. The grounds asserted for removal were that the members of the Boone County Commission, with defendant James R. Goodwin abstaining, voted to pay $14,-547.64 to defendant James R. Goodwin to reimburse him for attorneys' fees expended in defense of preliminary criminal proceedings before a Boone County grand jury and subsequently in defending a petition to remove Commissioner Goodwin from office. The threatened criminal action arose from Commissioner Goodwin's alleged misuse of a county commission telephone credit card.

The court below concluded that the defendants Ed Cooke and James W. Armstrong authorized an unlawful expenditure of county money for an unauthorized purpose under the provisions of *W. Va. Code*, 11–8–26 [1963], but that since such expenditure was arguably made in good faith in reliance upon an erroneous written opinion on the matter from the assistant prosecuting attorney of Boone County, the expenditure was not a removable act under *W. Va. Code*, 11–8–31 [1933]. The plaintiffs below now appeal this determination on the grounds that if the expenditure was unauthorized, the defendant commissioners should have been removed.

The defendants below, however, did not survive this proceeding unscathed. The trial court concluded that since the expenditure for attorneys' fees was unauthorized, defendant James R. Goodwin is primarily liable for the repayment of that amount and the other defendant commissioners are secondarily liable and must repay the county $14,547.64 in event that James R. Goodwin defaults on his primary obligation. Defendants below appeal the money judgment on the grounds that the attorneys' fees were paid in good faith upon reliance on a written opinion from the statutory attorney for the county commission, and that, therefore, defendants Armstrong and Cooke are not personally liable for expenditures approved by them in good faith.

The trial court disposed of this case on summary judgment. The amount of attorneys' fees was stipulated; the reasons for Mr. Goodwin's incurring the attorneys' fees were stipulated; the written opinion of the assistant prosecuting attorney of Boone County was before the court; and, while the element of good faith was central to many of the conclusions necessary to the resolution of this case, neither plaintiffs nor defendants asked to introduce any evidence on that subject, relying instead on circumstantial evidence already before the court.

█ Unfortunately, the trial court's decision in this case is inconsistent with the law. Essentially, if the defendants were sufficiently culpable to be required to repay the money personally, they were sufficiently culpable to be removed from office. Under our statutes, a county commission member can be removed from office upon a lower standard of proof than that required to make him personally liable for misappropriated funds. Consequently, we must reverse and remand the case for further proceedings consistent with this opinion.

I

There are three statutes at issue in this case. The first is *W. Va. Code*, 11–8–26 [1963] that provides:

Except as provided in sections fourteen-b, twenty-five-a and twenty-six-a [§§ 11–8–14b, 11–8–25a] of this article, a local fiscal body shall not expend money or incur obligations:

(1) In an unauthorized manner;

(2) For an unauthorized purpose;

(3) In excess of the amount allocated to the fund in the levy order;

(4) In excess of the funds available for current expenses.

Notwithstanding the foregoing and any other provision of law to the contrary, a local fiscal body or its duly authorized officials shall not be penalized for a casual deficit which does not exceed its approved levy estimate by more than three per cent, provided such casual deficit be satisfied in the levy estimate for the succeeding fiscal year.

The second statute at issue is *W. Va. Code*, 11–8–29 [1933] that establishes the standard of proof required to create personal liability on the part of a county commission member. That statute provides:

A person who in his official capacity *wilfully* participates in the violation of sections twenty-five [§ 11–8–25] and/or twenty-six [§ 11–8–26] of this article shall be personally liable, jointly and severally, for the amount illegally expended. [Emphasis supplied by Court]

The third statute at issue is *W. Va. Code*, 11–8–31 [1933] that sets forth the standard of proof for a criminal prosecution or removal from office. That statute provides:

A person who in his official capacity *wilfully* violates the provisions of this article shall be guilty of a misdemeanor, and upon conviction shall be fined not more than five hundred dollars, or confined in jail not more than one year, or both. Upon conviction he shall also forfeit his office. . . .

The State, a taxpayer, or the tax commissioner may institute and prosecute to final judgment any proceeding for the removal of a member of a local fiscal body who has *wilfully* or *negligently* violated any of the provisions of this article. . . . [Emphasis supplied by Court]

When we read these statutes together it can be observed that a "wilful" violation is required for either a criminal prosecution or a successful action to establish personal liability against a county officer. However, *Code*, 11–8–31 [1933] allows removal of the county officer if he "negligently" misappropriates money. The court below found that the defendant commissioners acted in "good faith" and, therefore, could not be removed. However, the court went on to find that since the appropriation was unlawful, the defendant commissioners should be required to repay the money personally. Succinctly stated, the principle that the court misapplied is this: if the defendant commissioners were sufficiently culpable that they should be required to repay the money, they are obviously sufficiently culpable to be removed. On the other hand if the defendant commissioners acted both in good faith and non-negligently they should neither be removed nor required to repay the money. The intermediate ground is the exact opposite of what the court found: namely, that if the defendant commissioners acted in good faith, but negligently, they should be removed from office but should not be required to repay the money. Since no evidence other than the nature of the transactions themselves was introduced on the issue of "good faith" *vel non*, the court on remand must undertake a minute examination of this question in light of the guidelines set forth in this opinion.

## II

The expansion of personal liability on the part of government officers during the last twenty years and the concurrent restriction of the defense of sovereign immunity has made the question of the indemnification of government employees for the expenses of litigation one of increasing public concern. *See generally*, Berman, "Integrating Governmental and Officer Tort Liability," 77 *Colum.L.Rev.* 1175 (1977); Shepsle, "Official Errors and Official Liability," 42 *Law and Contemporary Problems* 35; Cass, "Damage Suits Against Public Officers," 129 *U.Pa.L.Rev.* 1110 (1981). West Virgi-

nia has no statutes directly relating to whether an officer should be reimbursed for attorneys' fees that he incurs in defending actions against himself personally as a result of his official conduct.[1]

We observe that as a matter of practice the Attorney General of the State of West Virginia provides legal counsel to the Commissioner of Welfare, the Commissioner of Corrections, and numerous other state officials and employees who are sued *personally* for activities arising out of the performance of their official duties. This is authorized by *W. Va. Code*, 5–3–2 [1972].[2] Furthermore, *W. Va. Code*, 7–4–1, [1971] provides that the prosecuting attorney of a county shall be the statutory attorney for the county commission, and *W. Va. Code*, 7–4–3 [1969] provides that in counties having a population of more than one hundred thousand the county commission may retain separate counsel for all civil matters. Thus, we conclude that as a matter of practice the State and its political subdivi-

sions provide counsel for most of the routine types of civil litigation, such as federal court actions based upon 42 U.S.C. § 1983, that are likely to be brought against state and county officials personally for activities arising from the discharge of their official duties.

In the case before us, however, the defendant Commissioner Goodwin incurred a substantial part of his attorneys' fees in defense of an impending criminal prosecution that was, in fact, arrested at the preliminary stage. Apparently, although the record is not developed on this subject in great detail, Commissioner Goodwin was successful in averting a Grand Jury indictment in Boone County through the efforts of his lawyers. Obviously, under circumstances where the prosecuting attorney was to be the initiator and prosecutor of the criminal action against a county commissioner, it would have been impossible for him or any member of his office simul-

1. *W. Va. Code*, 29–12–1 *et seq.*, mandates, in part, that the state board of insurance of West Virginia provide liability insurance coverage for all state officials, agents and employees. Hence, in any action covered by such insurance, the insurance company that provided the policy is responsible for hiring legal counsel.

2. "The attorney general shall appear as counsel for the State in all causes pending in the supreme court of appeals, or in any federal court, in which the State is interested; he shall appear in any cause in which the State is interested that is pending in any other court in the State, on the written request of the governor, and when such appearance is entered he shall take charge of and have control of such cause; he shall defend all actions and proceedings against any state officer in his official capacity in any of the courts of this State or any of the federal courts when the State is not interested in such cause against such officer, but should the State be interested against such officer, he shall appear for the State; he shall institute and prosecute all civil actions and proceedings in favor of or for the use of the State which may be necessary in the execution of the official duties of any state officer, board or commission on the written request of such officer, board or commission; he may consult with and advise the several prosecuting attorneys in matters relating to the official duties of their office, and may require a written report from them of the state and condition of the several causes, in which the State is a party, pending in the courts of their respective counties; he may require the several prosecuting attorneys to perform, within the respective

counties in which they are elected, any of the legal duties required to be performed by the attorney general which are not inconsistent with the duties of the prosecuting attorneys as the legal representatives of their respective counties; when the performance of any such duties by the prosecuting attorney conflicts with his duties as the legal representative of his county, or for any reason any prosecuting attorney is disqualified from performing such duties, the attorney general may require the prosecuting attorney of any other county to perform such duties in any county other than that in which such prosecuting attorney is elected and for the performance of which duties outside of the county in which he is elected the prosecuting attorney shall be paid his actual traveling and other expenses out of the appropriation for contingent expenses for the department for which such services are rendered; the attorney general shall keep in proper books, a register of all causes prosecuted or defended by him in behalf of the State or its officers and of the proceedings had in relation thereto, and deliver the same to his successor in office; and he shall preserve in his office all his official opinions and publish the same in his biennial report.

"Upon request of any member of the West Virginia national guard who has been named defendant in any civil action arising out of that guardsman's action while under orders from the governor relating to national guard assistance in disasters and civil disorders, the attorney general shall appear as counsel for and represent such guardsman."

taneously to represent the commissioner in such proceeding as statutory attorney for the county commission.

### III

■ There are hundreds of reported cases among the states in this century touching upon the propriety of indemnification of government officials for attorneys' fees arising from official conduct. *See generally* Annot., 13 A.L.R. 736 (1921); Annot., 71 A.L.R.3d 90 (1976). A fair reading of the admittedly divergent cases on this subject leads to the conclusion that the majority view is succinctly stated in McQuillin, *Municipal Corporations*, 3d Ed., § 12.137 where the learned commentator says:

> Where a municipal officer incurs a loss in the discharge of his official duty in a matter in which the corporation has an interest, and in the discharge of a duty imposed or authorized by law, and in good faith, the municipal corporation has the power to appropriate funds to reimburse him, unless expressly forbidden. And this it may do, although it may turn out that the officer exceeded his legal rights and authority. Thus, where a mayor in performance of the duties of his office, in good faith, exceeds his authority which results in a judgment against him for false imprisonment, it is competent for the city to indemnify him for the expense of such judgment. And, although reimbursement for expenses incurred in civil actions is sometimes denied, it has been held to be legal for a municipality to appropriate a reasonable amount of its funds to employ counsel to defend its police officers in actions for false imprisonment and other actions.

> Cases may and often do arise, in which towns may assume to indemnify their agents where the result of a trial at law clearly shows that the acts were illegal, provided such acts were done by the agents in the bona fide discharge of their duties. A city may assume the expense of a suit against its agent or its servant in which the interests of the municipality are directly involved. Where a police officer, in the discharge of his duty, in attempting to kill a mad steer at large in a crowded street, shot a boy who recovered damages therefor, the city, it was held, had a right to reimburse him for the amount paid as damages. So it may indemnify its school committee, it has been held, for expenses incurred in defending an action for an alleged libel contained in a report made by them in good faith and in which judgment was rendered in their favor. A variety of circumstances in which the municipal corporation may indemnify or reimburse appear from adjudications.

■ The rules governing whether a public official is entitled to indemnification for attorneys' fees appear to be fairly simple. In order to justify indemnity from public funds, the underlying action must arise from the discharge of an official duty in which the government has an interest; the officer must have acted in good faith; and the agency seeking to indemnify the officer must have either the express or implied power to do so.[3] The problem, of course, is how to apply these criteria in any particular case.

Frequently the reported cases make a distinction between civil and criminal proceedings, and in general the cases appear to disfavor indemnification in criminal proceedings. *E.g. Guerine v. Northlake*, 1 Ill.App.3d 603, 274 N.E.2d 625 (1971). Criminal law presents greater obstacles to frivolous prosecutions than does civil law, and, obviously, there is a reluctance on the part of the prosecuting authorities to bring actions against other government officers for alleged crimes arising out of the performance of official duties. Police officers

---

**3.** *W. Va. Code*, 7–1–3 [1923] provides in part that county commissions "have the superintendence and administration of the internal police and fiscal affairs of their counties...." We have interpreted this phrase as granting implied powers reasonably necessary to carry out the express responsibilities of the county commissions. *See State ex rel. County Court v. Arthur*, 150 W.Va. 293, 145 S.E.2d 34 (1965); *Mohr v. The County Court of Cabell County*, 145 W.Va. 377, 115 S.E.2d 806 (1960).

are most frequently the subject of criminal prosecutions as a result of either assault and battery or even murder during the pursuit and apprehension of suspects.

Our efforts to glean from the common law of American jurisdictions a workable test on the issue of indemnification for attorneys' fees incurred in criminal prosecutions arising from the discharge of official duties are confounded by the fact that in most places the problem is resolved by statute.[4] For example, in *Wassef v. State of New York*, 98 Misc.2d 505, 414 N.Y.S.2d 262 (1979) the Court of Claims declined to indemnify an x-ray technician for attorneys' fees incurred in defending a prosecution for sexual molestation arising from an incident concerning a patient in a state hospital. However, the court resolved the case exclusively on the basis of the statute and suggested that the limitation of indemnity to civil matters was too narrow. In this regard the court said:

> The Court must comment that the inclusion of indemnification for the successful defense of certain criminal matters within Public Officers Law, Section 17 should be carefully studied by the Legislature. The Court can foresee certain areas of State employment which may be unusually prone to the receipt of frivolous and unfounded complaints against employees, to their superiors or to the other governmental agencies. These might be by members of the public, co-employees or even by local law enforcement officers. When or if these are reduced to criminal charges, the employee may be required to expend large sums of money for defense of the same, irrespective of their merits. To require the employee, upon successfully defending an unfounded criminal charge to seek redress solely by suing the complainant for malicious prosecution could surely be an undue burden. Without passing on the merits of the fact pattern contained

in the claim at bar, the Court urges that certain such situations within the scope of employment could and should be included within the statutory provisions.

The case before us is a good example of why so many reported cases have asserted the general rule that a government official cannot be indemnified for attorneys' fees arising from a criminal prosecution. There appears to be no dispute that the defendant Goodwin misused his county telephone credit card by charging personal calls on the county telephone account. While the Grand Jury ultimately concluded that under some *de minimis* rule the misappropriation of county funds in this regard did not warrant a criminal prosecution, nonetheless, the grand jury did recommend Commissioner Goodwin's removal from office. Certainly no reasonable person could conclude that the underlying criminal charge arose from the good faith discharge of Commissioner Goodwin's official duties. Yet in this analysis we have worked backward from the grand jury's conclusion that Commissioner Goodwin was guilty to the perfectly logical inference that his larcenous activities had nothing whatsoever to do with the discharge of his duties.

Like the New York court in *Wassef, supra*, we can envisage situations where a criminal prosecution does, indeed, arise directly from the good faith discharge of official duties. In the case of *State ex rel. Miller v. Smith*, 168 W.Va. 745, 285 S.E.2d 500 (1981) this Court held that any citizen may appear before a county Grand Jury to seek an indictment, notwithstanding the reluctance of the county prosecutor to seek such an indictment himself. Consequently, in West Virginia there are fewer impediments to frivolous criminal prosecutions than there are perhaps elsewhere.

■ While the number of criminal prosecutions emanating directly from the discharge of official duties is small, they are not necessarily nonexistent. In this regard

---

**4.** *See, e.g.*, Fla.Stat.Ann. §§ 111.065–.07 (West Supp.1980); Ill.Ann.Stat. ch. 127, §§ 1301–1302 (Smith-Hurd Supp. 1979); Kan.Stat.Ann. §§ 75–6101 to –6116 (Supp.1980); Minn.Stat. § 3.736, subd. 9 (West Supp. 1980); N.C.Gen.Stat. § 143–300.4 (1977); Ohio Rev. Code Ann. §§ 9.87, 109.36–.366 (Page Supp. 1980); 42 Pa. Cons.Stat.Ann. § 5110(c) (Purdon Supp. 1980); Pa.Stat.Ann. tit. 53, § 5311.303 (Purdon Supp. 1980); Wis.Stat. §§ 165.25(6), 895.46 (1974 & Supp. 1980).

we can at least envisage prosecutions against police officers for the use of excessive force and proceedings in criminal contempt against local officials who are accused of failing to follow either state or federal court orders. It would appear, of course, that conviction of a common law or statutory crime is conclusive proof that the official was not acting in good faith and was outside the scope of his official duties. Civil and criminal contempt, however, present much more difficult problems since those proceedings are frequently the forum for adjudication of complex governmental issues and, notwithstanding the possibility of a nominal criminal sanction, the officials charged with contempt have no personal interest in the subject of the litigation. Furthermore, exoneration either by a preliminary dismissal or a verdict of not guilty in an ordinary criminal prosecution is not necessarily conclusive proof that the official acted in good faith and was within the scope of his official duties.

█ This analysis leads us then, ineluctably, to an inquiry concerning the method by which a determination of whether to indemnify a public official for attorneys' fees can be made in the absence of a specific statute on that subject. The problem is comparatively simple when there is a neutral official or fiscal body that can pass upon the request for indemnity by one of its own employees or even by another elected or appointed official. Such a scheme is provided by statute in several jurisdictions. *See e.g., Ill.Stat.Ann.* ch. 127, § 1302(b)–(c) (Smith-Hurd Supp.); *Wash.Rev.Code Ann.,* §§ 4.92.060–070 (Supp.1980). Where, for example, a municipality authorizes legal fees in defense of one of its police officers that determination is presumptively made in good faith and absent evidence of fraud or conspiracy should be beyond challenge. What happens, however, when the decision to indemnify for attorneys' fees is made by a body on behalf of one or all of its own members?

█ In the leading case of *Board of Com'rs v. Casper National Bank,* 56 Wyo. 132, 105 P.2d 578 (1940), the court pointed out:

It is a maxim recognized in early common law that no man can be judge in his own cause.... It is a maxim which must at once commend itself to every reasonable man, and which ought not to be disregarded, except when a countervailing public policy by reason of the necessity of the situation exists.... There can be no doubt that here the individual defendants in the suit became judges in their own case, and that for the purpose of protecting themselves against a charge of having extorted money from the county for their individual benefit. It is perfectly apparent that the court must apply the maxim in such a situation. It is true that they are in a less favorable position than officials whose expenses, according to the cases above cited, may be paid by the city or similar organization. But that is a penalty, if a penalty it is, the risk of which they assume when they take office.

In light of the increasing frequency of legal proceedings against public officials in their individual capacity, but arising out of official duties, it is not possible to adopt the "tough luck" approach of the Wyoming court in 1940. Yet the problem of a person being judge in his own cause is no less bothersome today than it was forty-two years ago. In this jurisdiction we have long recognized that there are occasions where a court must, under the rule of necessity, decide a matter in which it is interested itself. *State ex rel. Brotherton v. Blankenship,* 157 W.Va. 100, 207 S.E.2d 421 (1973) and, cases cited therein. However, with regard to those instances where a public body must make the determination whether to indemnify itself for attorneys' fees, there is no presumption of regularity and the award can subsequently be challenged like any other illegal expenditure.

Obviously, there will be instances where indemnification for attorneys' fees is so clearly the order of the day that there is eminently little risk of a subsequent determination that the appropriation was illegal. In such instances further formalities would appear to be pointless. In questionable cases it is possible to get an advance deter-

mination of the legality of indemnification through an Attorney General's opinion or a mandamus proceeding similar to the one that we traditionally employ to test the validity of bond issues. *E.g., State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 207 S.E.2d 113 (1973); *State ex rel. State Building Commission v. Moore*, 155 W.Va. 212, 184 S.E.2d 94 (1971); *State ex rel. County Court v. Demus*, 148 W.Va. 398, 135 S.E.2d 352 (1964); *State ex rel. County Court v. Bane*, 148 W.Va. 392, 135 S.E.2d 349 (1964). While the mandamus proceeding is admittedly artificial in terms of a true adversarial confrontation, nonetheless, it succeeds in getting the question before a neutral arbiter in a comparatively expeditious fashion. Furthermore, we have observed in such cases that the lawyers representing the nominal respondent make a sincere effort to present the opposing side.

■ Consequently, when a county commission or other fiscal body is in doubt about whether it is appropriate to expend county funds to indemnify itself for legal fees incurred as a result of the good faith discharge of its duties, it can bring a mandamus action against the sheriff or other appropriate ministerial officer to require him to issue the check for that purpose. This particular procedure impresses itself upon our imagination because in the case before us the county commissioners assert their reliance upon an opinion of the county prosecutor's office as evidence of the good faith of their appropriation. The plaintiffs, however, point to the power that the county commission has over the salary of an assistant prosecuting attorney and point in addition to an almost contemporaneous fifteen percent increase in the pay of the assistant prosecuting attorney who rendered the advisory opinion that supported the commission's expenditure in this case. No similar relationship of dependency exists with regard either to the State Attorney General or the local circuit court.

IV

■ Part of the attorney's fees paid to Commissioner Goodwin were incurred as a result of his defense of a removal action grounded in his misuse of the county telephone credit card. If it is determined upon remand that Commissioner Goodwin did, indeed, misuse his county telephone charge card for his personal purposes then it can be concluded that his defense of a criminal prosecution concerning such misuse of the card did not emanate from the discharge of his official duties. In that event it must reasonably follow that the removal petition against Commissioner Goodwin was justified by Commissioner Goodwin's own illegal activities. Since the expenditure of funds for his attorneys' fees was entirely for his own personal benefit, it cannot be said that in any regard the political body had an interest in either his defense or vindication. Consequently, if the facts disclose attorneys' fees in defense of a meritorious prosecution, then the appropriation of money for attorneys' fees was improper.

Nevertheless, there may indeed be occasions where officers of a fiscal body must defend themselves against removal proceedings as a direct result of actions which they took entirely in their official capacity and exclusively for the benefit of the body politic that they are serving. Our statutes are comparatively specific with regard to those expenditures that a public body is authorized to make, *see, e.g., W. Va. Code*, 7–1–3 *et seq.* (powers and duties of county commissions) and even good faith but negligent deviations from the explicit mandate of the statutes are arguably grounds for removal. *W. Va. Code*, 11–8–31 [1933]. We have usually held that there must be either intentional deviation from the requirements of the statute or such extreme negligence as to reflect a palpable neglect of duty to warrant removal. *Lane v. Blair*, 158 W.Va. 359, 250 S.E.2d 124 (1979); *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975); *see also Kemp v. Boyd*, 166 W.Va. 471, 275 S.E.2d 297 (1981). Wilfulness and palpable neglect of duty, obviously, are issues that must be determined in a court of record and no legitimate public policy is served by, in effect, forcing the premature resignation of public officials because they are incapable of defending themselves in such pro-

ceedings, although they may ultimately be exonerated.

■ More to the point, the voters have a legitimate interest in protecting their duly elected officials from being hectored out of office through the constant charge of bankrupting attorneys' fees on their own personal resources. One of the obligations of a duly elected public official is to continue to discharge the office to which he was elected since it can reasonably be assumed that he was elected because of his public stand on issues of concern to the voters. Consequently, continued service in an elected position is not a question in which only the officeholder has a personal concern; in a democratic government predicated upon the competition of policies and ideas through different candidates for elected office, the public itself has an interest in seeing persons elected by a majority continue in office.

### V

Having discussed at length the question of when indemnification for attorneys' fees is permissible and, along the way, having suggested procedures for fiscal bodies to make such determinations in the future, we now address the tests that the trial court should employ on remand both to determine whether Commissioners Cooke and Armstrong are or are not immune from civil liability for their decision to indemnify Commissioner Goodwin and to determine whether the two commissioners should or should not be removed. As noted earlier, *W. Va. Code*, 11–8–29 [1933] makes the commissioners personally liable for expenditures which constitute *wilful* violations of the two code sections prohibiting unauthorized expenditures. We have defined *wilful* in this context as "[i]ntending the result which actually comes to pass; design; intentional; not incidental or involuntary." *State ex rel. Koontz v. Smith*, 134 W.Va. 876, 882, 62 S.E.2d 548 (1950). Hence, in order to hold the commissioners liable, the trial court must find that they intended to expend the funds for what they thought to be an unauthorized purpose. In other words, "good faith" is a defense to personal liability under the statute.[5]

Since under *W. Va. Code*, 11–8–31 [1933], removal is warranted for merely negligent conduct, as well as wilful conduct, the trial court must resolve the removal issue by employing a standard different from that used to determine personal liability. In *Lane v. Blair*, 162 W.Va. 281, 250 S.E.2d 124 (1978), this Court found sufficient negligence on the part of school board members to warrant their removal. In *Lane* the Logan County Board of Education had received $630,000 to be used for vocational construction only. The board placed the funds in certificates of deposit that were inadvertently given a code number that indicated that the funds were available for general expenditures. The evidence showed that the board members were aware that they were consistently overspending their budget. Yet, when they were consistently able to spend "unexpected" funds to meet the budget, none of the members sought to investigate the situation. In finding the members to be negligent, we emphasized that once the members were aware that they were spending funds they did not know they had, they

---

5. The "wilful" standard of *W. Va. Code*, 11–8–29 [1933] offers public officials greater protection from liability than does the standard fashioned by the United States Supreme Court for suits brought against public officials under 42 U.S.C. § 1983. In *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), plaintiffs sought damages under 42 U.S.C. § 1983 against the Governor of Ohio, the President of Kent State University, and several officers and enlisted men in the Ohio National Guard for their actions leading up to the deaths of several students in May 1970. After the court of appeals had ruled that the defendants were protected by absolute immunity, the Supreme Court reversed by setting out a means of determining qualified immunity. Under *Scheuer* a public official is immune from § 1983 suits for "acts performed within the course of official conduct" if there were reasonable grounds for his belief that his actions were legal and if the public official actually had such a good faith belief. *Id.* 416 U.S. at 247–48, 94 S.Ct. at 1691–92. Hence, to qualify for immunity under *Scheuer* a public official must pass both the objective test of reasonable grounds and the subjective test of good faith. *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Under *W. Va. Code*, 11–8–29 [1933] he need pass only the latter.

were under a duty to investigate. We held that their failure to do so was negligent. *Id.* at 126.[6]

Adapting *Lane* to this case the trial court should determine the question of negligence by examining the official duties of county commissioners, the reasonableness of the two commissioners' actions in light of their statutory duties, and the circumstances surrounding their decision to indemnify Commissioner Goodwin.[7]

It would appear to this Court that on the facts presented to the court below in the joint motions for summary judgment that the reimbursement of Mr. Goodwin for his attorneys' fees was probably an unauthorized expenditure since the foundation of both the criminal prosecution and petition to remove him from office was personal malfeasance entirely unrelated to the discharge of his official duties. However, on remand it must be determined whether the other commissioners acted: (1) in good faith and non-negligently; (2) in good faith but negligently; or (3) in bad faith and wilfully. If the commissioners acted in good faith and non-negligently, then they can neither be removed from office nor be required to repay the money. If, however, the commissioners acted in good faith, but negligently, they can be removed, but cannot be held personally liable for the misappropriated funds. Finally, if Commissioners Cooke and Armstrong acted both in bad faith and wilfully, they can be removed from office and can be held personally liable for repayment of the misappropriated funds. The ultimate resolution of the case with regard to Commissioners Cooke and Armstrong depends entirely upon the resolution of these questions and the case is reversed and remanded for such further proceedings. While the case against Commissioner Goodwin appears stronger, since the record appears to justify a factual holding that Commissioner Goodwin did misuse his credit card, we are reluctant to make such a determination here since the trial court made no explicit findings on that issue and the case below appeared to be concerned with the attorney fee issue alone. Accordingly, the trial court must, upon remand, determine the issue of Commissioner Goodwin's alleged illegal acts as a threshold question.

Reversed and remanded.

6. *Lane, supra* in text, however, is hypothetically a good case for the award of attorneys' fees even though the board members were ultimately removed. While the board members were negligent, they did not divert money for any reprehensible personal reason. Whether they were negligent was a close question, and since the legality of their actions could only have been determined after a court action, lack of advance indemnity for attorneys' fees would have had a chilling effect on their ability to litigate the issue of the propriety of their actions. The entire removal proceeding in that case was in the nature of a political law suit (in the best sense) designed to determine the legal propriety of a course of official conduct that the board members had pursued in good faith.

7. We recognize that, while our decision today offers more protection to a public official on the issue of liability than does *Scheuer, see* note 5, *supra,* our holding as to removal is identical to that of *Scheuer.* Since *W. Va. Code,* 11–8–31 [1933] permits removal for either wilfull or negligent violations, a public official must pass both the subjective test of good faith and the objective test of reasonable grounds.