721 S.E.2d 44

STATE of West Virginia ex rel.
Gregory SMITH, Petitioner

v.

MINGO COUNTY COMMISSION, Jim
Hatfield, Mingo County Clerk, and Lonnie Hannah, in his Official Capacity as
Mingo County Sheriff, Respondents.

No. 100916.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 19, 2011.

Decided Nov. 21, 2011.

John A. Kessler, Esq., David R. Pogue, Esq., Michael W. Carey, Carey, Scott, Douglas & Kessler, PLLC, Charleston, WV, Attorneys for Petitioner.

Leah Macia, Esq., Spilman Thomas & Battle, PLLC, Charleston, WV, Attorney for Respondent Mingo, County Sheriff Lonnie Hannah.

WORKMAN, Chief Justice:

Petitioner Gregory Smith, a Commissioner on the Mingo County Commission, appeals the denial of his petition for a writ of mandamus by the Circuit Court of Mingo County, West Virginia. After successfully defending against a Petition for Removal, Petitioner Smith filed a complaint with the circuit court, seeking a writ of mandamus directing the Mingo County Sheriff and the Mingo County Commission to reimburse him for his costs and attorney's fees incurred in his defense. The circuit court denied his petition, finding that Petitioner Smith did not meet the standard for the issuance of such a writ. For the reasons that follow, this Court reverses the circuit court's order and remands the case for further consideration.

## I. FACTS AND PROCEDURAL HISTORY

On December 15, 2006, the Assessor of Mingo County (at that time David Baisden [1]) and the Sheriff of Mingo County, Lonnie Hannah ("Respondent Hannah"), filed a Petition for Removal pursuant to West Virginia Code § 6-6-7 (2010), seeking to remove Petitioner Smith from his position as a commissioner on the Mingo County Commission. Among other things, the petition contained

allegations that Petitioner Smith had illegally delegated his duty to auction county property, failed to sign all checks issued by the county commission, voted to fund entities which were later indicted for defrauding Mingo County, wasted public funds and employed a convicted felon in a position in Mingo County. Pursuant to the governing statute, this Court empaneled a three-judge court to consider and rule on the Petition for Removal. W. Va.Code § 6-6-7.

After conducting a two-day hearing, the three-judge court issued a written order on October 2, 2007, denying the Petition for Removal. In its order, the court concluded that although Petitioner Smith had committed "technical" violations of two statutes, the petitioners had failed to prove, by clear and convincing evidence, that the violations justified removing Petitioner Smith from office. Accordingly, the three-judge court ordered that the case be dismissed from the court's docket. The three-judge court was not asked to consider, nor did it consider, any issues regarding reimbursement of costs or attorney's fees to Petitioner Smith. Respondent Hannah appealed the three-judge court's ruling and this Court denied that appeal on May 22, 2008.

On July 23, 2008, Petitioner Smith filed a Petition for a Writ of Mandamus in the Circuit Court of Mingo County, seeking to compel the Mingo County Commission to reimburse him for $53,548.81 in attorney's fees and costs that he spent in defending against the unsuccessful removal petition. Petitioner Smith's mandamus action named the Mingo County Commission, Jim Hatfield (the Mingo County Clerk), and Respondent Hannah as defendants.[2]

On March 24, 2010, the circuit court entered an order denying Petitioner Smith's complaint, finding that Petitioner Smith had failed to meet the three factors required for the issuance of a writ of mandamus.[3] The circuit court focused primarily on the first

---

1. David Baisden is now a commissioner on the Mingo County Commission.

2. Neither the Mingo County Commission nor Jim Hatfield responded to Petitioner Smith's petition for appeal.

3. The three factors required for the issuance of a writ of mandamus are set forth in Section II of this opinion, *infra.*

factor, finding that Petitioner Smith had failed to establish a clear legal right to the relief requested. It found that Petitioner Smith could have, and should have, requested reimbursement of fees from the three-judge court that considered the removal petition. The circuit court found that the three-judge court "clearly" could have addressed the issue, "since the three-judge court is statutorily { e.g. Code 6–6–7[ (c) ]} empowered and mandated to issue a final order containing '. . . such findings of fact and conclusions of law as the three-judge court shall deem sufficient to support its decision *of all issues presented* to it in the matter.'" The circuit court distinguished the instant case from this Court's opinion in *Powers v. Goodwin,* 170 W.Va. 151, 291 S.E.2d 466 (1982), which authorized the use of mandamus to obtain reimbursement of attorney's fees following a successful defense in a removal action on the basis that the statutory scheme relating to removal actions has been modified since *Powers* was issued.

The circuit court further determined that Petitioner Smith had failed to meet the criteria for the second and third factors required for the issuance of mandamus as well. As to the second factor, it found that Petitioner Smith had failed to establish that the Mingo County Commission had a clear legal duty to pay the attorney's fees and costs. Because it found that the three-judge court *could* have awarded costs and attorney's fees, the circuit court finally concluded that there was no absence of another adequate remedy. It is from this order that Petitioner Smith now appeals.

## II. STANDARD OF REVIEW

■ This case comes before the Court as an appeal of a denial of a writ of mandamus. "A *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." Syl. Pt. 1, *Harrison Cnty. Comm'n v. Harrison Cnty. Assessor,* 222 W.Va. 25, 658 S.E.2d 555 (2008).

> Before this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the

respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law.

Syl. Pt. 3, *Cooper v. Gwinn,* 171 W.Va. 245, 298 S.E.2d 781 (1981).

## III. DISCUSSION

In his appeal, Petitioner Smith contends that all three criteria required for the issuance of a writ of mandamus are met in this case. He relies substantially on *Powers,* 170 W.Va. at 160, 291 S.E.2d at 475, in which this Court found that mandamus is an appropriate method by which to resolve questions concerning the reimbursement of attorney's fees to public officials who have successfully defended against removal petitions. The circuit court, however, found that *Powers* had been

> considered by our Supreme Court under the old law authorizing the use of a single-judge proceeding involved in a removal proceeding, and prior to the 1985 amendments to *West Virginia Code* § 6–6–7[ (c) ], which codified changes authorizing the three-judge court to preside over such removal cases, as presently outlined in the statute.

Thus, the circuit court declined to afford any weight to the *Powers* decision, instead holding that under the current statutes, Petitioner Smith should have sought reimbursement for his attorney's fees from the three-judge court that ruled on the removal petition. This Court, therefore, turns first to the current statutory framework to determine whether the circuit court erred in holding that the three-judge panel could have, and should have, ruled on the issue of attorney's fees.

### A.

In 1985, the Legislature amended West Virginia Code § 6–6–7, which governs the removal of public officials from office. Prior to this amendment, removal petitions were heard by the circuit judge in the county in which the officer resided. W. Va.Code § 6–6–7 (1919). Pursuant to the 1985 amendments, however, such petitions are now heard by three-judge courts empaneled by the Chief Justice of the West Virginia Su-

preme Court of Appeals. W. Va.Code § 6–6–7(c) (2010).

Such three-judge court shall, without a jury, hear the charges and all evidence offered in support thereof or in opposition thereto and upon satisfactory proof of the charges shall remove any such officer or person from office and place the records, papers and property of his office in the possession of some other officer or person for safekeeping or in the possession of the person appointed as hereinafter provided to fill the office temporarily. Any final order either removing or refusing to remove any such person from office shall contain such findings of fact and conclusions of law as the three-judge court shall deem sufficient to support its decision of all issues presented to it in the matter.

*Id.* Thus, the three-judge court must consider the allegations contained in the removal petition, together with all evidence, and issue a final order complete with findings of fact and conclusions of law ruling upon "all issues presented to it in the matter." *Id.*

Relying upon this statutory language, the circuit court determined that Petitioner Smith could have and should have presented his request for reimbursement of attorney's fees to the three-judge court. It found that, by failing to do so, Petitioner Smith had failed to utilize a remedy which was available to him. The circuit court further found Petitioner Smith failed to establish a clear legal right to the relief sought through a writ of mandamus, because "there is no explicit statutory bases [sic] for the granting of attorney's fees and costs under these facts and circumstances...."

Contrary to the circuit court's findings, however, a statute does exist governing the reimbursement of attorney's fees to public officials who have successfully defended against a petition for removal. Indeed, in the same legislative Act that amended the procedures for hearing a removal petition, the Legislature also enacted West Virginia Code § 11–8–31a (2008), which provides, in relevant part:

*The governing body of the governmental entity of which a person is an official is hereby authorized to reimburse such person for the reasonable amount of such person's attorney fees in any case:*

(a) Wherein such person has successfully defended against an action seeking his or her removal from office, or

. . .

In either case such governing body shall have authority to determine if such reimbursement is warranted and the reasonableness of the amount sought to be recovered.

(Emphasis added.) Thus, at the same time it established the three-judge court system for hearing removal petitions, the Legislature also specifically delegated the authority to reimburse attorney's fees in such cases to "[t]he governing body of the governmental entity of which a person is an official." *Id.*

■ This Court has previously recognized that

[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Syl. Pt. 6, *Cmty. Antenna Serv., Inc. v. Charter Commc'ns VI, LLC,* 227 W.Va. 595, 712 S.E.2d 504 (2011) (quoting Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975)). When West Virginia Code §§ 6–6–7 and 11–8–31a, which both relate to the removal of public officials from office and which were enacted at the same time in a singular Act of the Legislature,[4] are read in *pari materia,* it is clear that the Legislature intended to vest local governing bodies, *not* the three-judge courts, with the authority to reimburse a public official for a reasonable amount of attorney's fees incurred in the course of suc-

4. 1985 W. Va. Acts c. 144.

cessfully defending against a removal action. The circuit court, therefore, erred in holding that Petitioner Smith could have requested such reimbursement from the three-judge court.

### B.

■ Both Petitioner Smith and Respondent Hannah agree that the circuit court erred in finding that the three-judge court had the authority to reimburse Petitioner Smith for his attorney's fees. The parties disagree, however, about whether Petitioner Smith could utilize a petition for mandamus pursuant to *Powers*, or whether he was required to seek reimbursement from the Mingo County Commission.

Under the plain language of West Virginia Code § 11–8–31a, "[t]he governing body of the governmental entity of which a person is an official is … authorized to reimburse such person for the reasonable amount of such person's attorney fees," in cases in which the public official "has successfully defended against an action seeking his or her removal from office." In the instant case, the "governing body of the governmental entity" of which Petitioner Smith is a member is the Mingo County Commission. *See id.* The Mingo County Commission is made up of three members, including Petitioner Smith and Commissioner Baisden, one of the individuals who filed the original petition for removal against Petitioner Smith. Given the obvious personal interest that both Petitioner Smith and Commissioner Baisden have in this matter, Petitioner Smith contends that both would have to disqualify themselves from considering his request for reimbursement of attorney's fees. Such disqualifications would prevent the Mingo County Commission from deciding the matter, however, as a quorum of at least two commissioners is required for the Commission to act. W. Va.Code § 7–1–1(b) (2010) ("A county commission shall consist of three commissioners as provided in section nine, article IX of the Constitution of the State of West Virginia, any two of whom shall constitute a quorum for the transaction of business.").

Respondent Hannah, on the other hand, argues that the Mingo County Commission is the only body authorized to consider a reimbursement of attorney's fees, and contends that Petitioner Smith should have sought reimbursement from the Commission before filing his Complaint for Mandamus. Notably, in his Answer to Petitioner Smith's Complaint for Mandamus, Respondent Hannah admitted that a quorum could not be achieved on the Commission for this matter.[5] Nevertheless, during oral argument before this Court, he argued for the first time that the Commission can achieve a quorum because Commissioner Baisden is not required to recuse himself as he has no financial interest in the attorney's fee decision.

West Virginia Code § 7–1–5a (2010), which governs the recusal of county commissioners from particular votes, provides that

> [e]ach county commissioner present during any county commission meeting when any question is put shall vote unless he is immediately and particularly interested therein. Before such question is put, any member having a *direct personal or pecuniary interest* therein should announce this fact, and request to be excused from voting. The disqualifying interest must be such as affects the member directly, and not as one of a class.

(Emphasis added.) While Commissioner Baisden may not have a pecuniary interest in a vote over whether to reimburse Petitioner Smith for his attorney's fees, he most certainly has a direct personal interest therein, given that Commissioner Baisden was one of the individuals who filed the original petition seeking to remove Petitioner Smith. For this reason, and because Respondent Hannah admitted as much in his Answer to the Complaint for Mandamus, the Court finds that the Mingo County Commission would not be able to achieve a quorum to vote on the issue of whether to reimburse Petitioner Smith for a reasonable amount of attorney's fees expended during his successful defense of the petition for removal.

5. Paragraph fourteen of Respondent Hannah's Answer to the Complaint for Mandamus states "Defendant Sheriff Hannah admits that because there can be no quorum of the Mingo County Commission, the Mingo County Commission cannot act."

## C.

The remaining issue, therefore, is how a public official who has successfully defended against a petition for removal should go about seeking reimbursement of attorney's fees, when the governing body of the governmental entity of which he is an official is unable to consider the issue. *See* W. Va. Code § 11-8-31a. The statute giving such authority to governing bodies of governmental entities, West Virginia Code § 11-8-31a, is silent on this point. As Petitioner Smith contends, however, this issue has already been addressed by this Court in *Powers*.

In *Powers*, a petition for removal and criminal charges had been filed against a member of the Boone County Commission, James Goodwin, alleging that Mr. Goodwin misused a county commission telephone credit card. 170 W.Va. at 154, 291 S.E.2d at 469. Mr. Goodwin successfully defended against both actions, incurring $14,547.64 in attorney's fees in the process. *Id.* The Boone County Commission, with Mr. Goodwin abstaining, voted to reimburse Mr. Goodwin for the expended fees. *Id.* Thereafter, a group of plaintiffs filed a petition to remove all three members of the Boone County Commission, including Mr. Goodwin. *Id.* The circuit court, which was tasked with presiding over the removal petitions at that time, found that the vote to reimburse Mr. Goodwin constituted an "unlawful expenditure of county money for an unauthorized purpose," but found that the vote was made in good faith and, thus, was not a removable act. *Id.* It did, however, order that Mr. Goodwin repay to the county commission the reimbursement of his attorney's fees and further ordered that, should Mr. Goodwin default on his debt, the remaining two members of the county commission would be secondarily liable. *Id.* The circuit court's rulings were based on its interpretation of the relevant statutes in effect at that time. *Id.*

On appeal, this Court concluded that the circuit court had misinterpreted the relevant statutes and reversed and remanded the case. *Id.* Specifically the Court found that under the statutes in effect at that time—all of which have subsequently been amended— "a county commission member can be removed from office upon a lower standard of proof than that required to make him personally liable for misappropriated funds." *Id.* Consequently, the circuit court had erred in finding the commissioners personally liable for the funds, but not sufficiently culpable to be removed from office.[6] *Id.*

■■■ The Court then addressed several issues relating to the reimbursement of attorney's fees to public officials who have successfully defended against removal actions, a topic which was not addressed by any statute in effect at that time. Specifically, the Court explained that "[t]he expansion of personal liability on the part of government officers during the last twenty years and the concurrent restriction of the defense of sovereign immunity has made the question of the indemnification of government employees for the expenses of litigation one of increasing public concern." *Id.* at 155, 291 S.E.2d at 470. It further noted that "West Virginia has no statutes directly relating to whether an officer should be reimbursed for attorneys' fees that he incurs in defending actions against himself personally as a result of his official conduct." *Id.* at 155-56, 291 S.E.2d at 470-71.[7] It therefore looked to the majority view from other jurisdictions to find that

> [t]he rules governing whether a public official is entitled to indemnification for attorneys' fees are the same in both the civil and criminal context. In order to justify indemnification from public funds the underlying action must arise from the discharge of an official duty in which the government has an interest; the officer

6. The statutes considered by the Court in this portion of the opinion, i.e. those regarding the correct standard of proof to apply to removal proceedings, have since been amended. *See* W. Va.Code § 11-8-26 (Supp.2011) (amended in 2009); W. Va.Code § 11-8-29 (2008) (amended in 1985); W. Va.Code § 11-8-31 (2008) (amended in 1985). Thus, to the extent that syllabus point one of *Powers*, which addresses these stan- dards of proof, has been superseded by statute, it is no longer controlling law.

7. As will be discussed further herein, this statement is no longer valid because the Legislature has subsequently passed a statute which address- es this issue specifically.

must have acted in good faith; and the agency seeking to indemnify the officer must have either the express or implied power to do so.

170 W.Va. 151, 291 S.E.2d 466, Syl. Pt. 3. Thus, the Court created a three-part test for determining when a public official should be indemnified for attorney's fees.

The Court additionally recognized that problems can arise when a decision regarding indemnification is made by the body on which the person seeking indemnification sits. *Id.* at 159, 291 S.E.2d at 474. It therefore found that "it is possible to get an advance determination of the legality of indemnification through ... a mandamus proceeding similar to the one that we traditionally employ to test the validity of bond issues." *Id.* at 159–60, 291 S.E.2d at 475. It acknowledged that such a mandamus proceeding may be "admittedly artificial in terms of a true adversarial confrontation," but found that such course of action "succeeds in getting the question before a neutral arbiter in a comparatively expeditious fashion." *Id.* at 160, 291 S.E.2d at 475.

> Consequently, when a county commission or other fiscal body is in doubt about whether it is appropriate to expend county funds to indemnify itself for legal fees incurred as a result of the good faith discharge of its duties, it can bring a mandamus action against the sheriff or other appropriate ministerial officer to require him to issue the check for that purpose.

*Id.*

Finally, the Court in *Powers* recognized that an important public interest is served by indemnifying public officials who have successfully defended against petitions for removal. It found that "the voters have a legitimate interest in protecting their duly elected officials from being hectored out of office through the constant charge of bankrupting attorneys' fees on their own personal resources." *Id.* at 161, 291 S.E.2d at 476. Thus, the Court concluded that indemnification in such circumstances is actually necessary to promote democracy:

> continued service in an elected position is not a question in which only the officeholder has a personal concern; in a democratic government predicated upon the competition of polices and ideas through different candidates for elected office, the public itself has an interest in seeing persons elected by a majority continue in office.

*Id.*

As previously noted, the circuit court in the instant case found that the 1985 amendments to West Virginia Code § 6–6–7 rendered *Powers* obsolete, because the circuit court found that the amendments to § 6–6–7 delegated the authority to reimburse attorney's fees to a prevailing public official to the three-judge panel. As already explained, however, this Court disagrees with that interpretation of § 6–6–7. Indeed, nothing in the amendments to § 6–6–7 in any way implicate the reimbursement of attorney's fees.

The passage of West Virginia Code § 11–8–31a, on the other hand, does have some bearing on the *Powers* opinion. As previously noted, when this Court issued *Powers*, no statute then in existence in any way governed the reimbursement of attorney's fees to a public official following a successful defense of a removal petition. Three years after *Powers* was issued, the Legislature enacted § 11–8–31a, which explicitly governs the issue. Nevertheless, upon close consideration, it is clear that the holdings of *Powers* and the language of § 11–8–31a are not mutually exclusive, but rather § 11–8–31a appears to build on the framework established in *Powers*.

Importantly, West Virginia Code § 11–8–31a does not address situations, such as in the instant case, in which the governing body of the governmental entity of which a public official is a member cannot make a determination regarding attorney's fees. Thus, the plain language of the statute is insufficient to resolve the issue in this case.

The *Powers* decision, on the other hand, addresses this type of situation precisely. Notably, this Court in *Powers* appears to have presumed that a governmental official or governing body of a governmental entity, such as a county commission, would consider reimbursements of attorney's fees to public officials who have successfully defended against removal petitions in most cases; it

did not presume that all cases would be decided by a court. 170 W.Va. at 159, 291 S.E.2d at 474 ("The problem [of what method to use to indemnify a public official for attorney's fees] is comparatively simple when there is a neutral official or fiscal body that can pass upon the request for indemnity by one of its own employees or even by another elected or appointed official."). Thus, the language in *Powers* indicating that indemnification of attorney's fees may be determined through the issuance of mandamus has always been limited to those situations in which the relevant governing body could not, or would not, make that decision itself. *Id.* at 159–60, 291 S.E.2d at 474–75.

■ Accordingly, because West Virginia Code § 11–8–31a does not provide a method for awarding attorney's fees in cases such as this, and because *Powers* does address this particular type of situation, the Court holds that a writ of mandamus is an appropriate method by which to determine whether a public official is entitled to reimbursement of reasonable attorney's fees following a successful defense to a petition for removal, when the governing body of the governmental entity of which such person is an official is unable to consider the issue.

### D.

■ As a final matter, the Court finds that West Virginia Code § 11–8–31a requires reliance on *Powers* in an additional respect. Specifically, that statute grants to governing bodies, such as a county commission, the "authority to determine if such reimbursement is warranted...." W. Va.Code § 11–8–31a. The statute, however, provides no criteria on which to base such a determination. On the other hand, such guidance is provided in syllabus point three of *Powers*, which sets forth factors to consider in determining this exact issue.[8] As previously stated, that syllabus point creates a three-part test for when a public official is entitled to indemnification for attorney's fees:

> [i]n order to justify indemnification from public funds the underlying action must

arise from the discharge of an official duty in which the government has an interest; the officer must have acted in good faith; and the agency seeking to indemnify the officer must have either the express or implied power to do so.

170 W.Va. 151, 291 S.E.2d 466, Syl. Pt. 3, in part. The Court, therefore, now holds that, in determining whether reimbursement for attorney's fees is warranted under West Virginia Code § 11–8–31a (2008), a governing body should apply the three-part test established in syllabus point three of *Powers v. Goodwin*, 170 W.Va. 151, 291 S.E.2d 466 (1982). Where a public official can meet the three elements of the *Powers* test, that official has established a clear legal right to the reimbursement of reasonable attorney's fees and, therefore, has met the first element required for the issuance of a writ of mandamus.

### IV. CONCLUSION

For the reasons stated herein, the Court reverses the March 24, 2010, order of the Circuit Court of Mingo County, West Virginia. The circuit court erred in finding that Petitioner Smith could have sought reimbursement of attorney's fees from the three-judge panel which ruled on the petition for removal, and erred in determining that *Powers* is no longer good law. The Court remands this case for reconsideration by the circuit court of whether Petitioner Smith has established the three necessary elements entitling him to a writ of mandamus. *See Cooper*, 171 W.Va. 245, 298 S.E.2d 781, Syl. Pt. 3. In considering the first element, whether Petitioner Smith has a clear legal right to the relief sought, the circuit court must determine if Petitioner Smith has met the three-part test set forth in syllabus point three of *Powers*. The case, therefore, is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

8. The test established in syllabus point three of *Powers* has been cited by this Court in a variety of cases involving the reimbursement of attorney's fees to public officials, most recently in

*State ex rel. Hicks v. Bailey,* 227 W.Va. 448, 711 S.E.2d 270 (2011). Consequently, there is no question that this portion of the *Powers* opinion has remained sound law.