294 S.E.2d 161

**Linda MARTIN, et al.**

v.

**Donald R. MULLINS, et al.**

No. 15415.

Supreme Court of Appeals of
West Virginia.

July 7, 1982.

**360**

Charles R. Garten, Charleston, for appellants.

Boyce Griffith, Hamlin, for appellees.

NEELY, Justice:

In 1976 the Lincoln County Board of Education fired five untenured school bus drivers, an untenured cook, and an untenured laborer; transferred a tenured employee of the school board; and transferred and demoted a school principal to a teaching position. These nine individuals then brought suit in the United States District Court under 42 *U.S.C.* §§ 1983, 1985, 1986, 1988, and directly under the First and Fourteenth Amendments to the *Constitution of the United States* against the Board of Education of Lincoln County, the Superintendent of Schools, and school board members Donald R. Mullins, Hurxel Woodall, and Billy Joe Smith, in their individual as well as their official capacities.

On 18 April 1978, U.S. District Court Judge Charles H. Haden, II entered a final order with regard to some of the matters in dispute. This order determined that six of the nine plaintiffs had been properly discharged, but that three others had been discharged for political reasons in direct violation of their First and Fourteenth Amendment rights as articulated in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The United States District Court ordered that the three prevailing employees be reemployed and awarded back pay from the date of their termination.[1]

The plaintiffs in the civil rights action in the U.S. District Court originally sought reinstatement to their former positions, re-

---

**1.** The order of the district court provided in pertinent part:

Inasmuch as both parties demanded a jury trial in this action, this Court may only grant permanent equitable relief in this action. Since injunctive relief may be awarded against the individual Defendants only in their official capacities, *Burt v. Board of Trustees*, [4th Cir., 521 F.2d 1201] *supra*, no relief may be awarded at this time against the individual Defendants in their individual capacities. As the Court in *Burt* stated:

"Since the named defendants possessed the power to reinstate and cause disbursement of back pay from public funds only in their *official* capacities as *trustees*, any judgment, to be consistent with the initial characterization as 'equitable' must necessarily run against defendants as officials. Private citizens are not empowered to reinstate or order back pay out of school board or county funds." 521 F.2d at 1204.

Accordingly, this Court will grant the following equitable relief against the Board of Education under 28 U.S.C. § 1331 and against the named members of the Board and the Superintendent in their official capacities under both 28 U.S.C. § 1331 and § 1343(3): The prevailing Plaintiffs are to be reinstated to their former positions with the Board of Education within a reasonable period, not to ex-

ceed sixty days from the date of entry of this Order. The prevailing Plaintiffs are to be awarded back pay from the date of their termination until the date of reinstatement. The amount of back pay awarded shall be such as will compensate the prevailing Plaintiffs for any net pecuniary loss they may have sustained as a result of their illegal termination. *Thomas v. Ward*, 529 F.2d 916 (4th Cir. 1975). This amount will include any increases in salary and any pension rights, medical or health insurance benefits, or other fringe benefits which would have accrued to the benefit of the prevailing Plaintiffs had they not been illegally terminated.

This back pay award is to be paid from the funds of the Board of Education of Lincoln County. Such an award does not violate the restrictions of the Eleventh Amendment. "While the actions of counties and other subdivisions of a state generally constitute a 'state action' for purposes of the fourteenth amendment, a county or other state subdivision 'is not necessarily a state defendant for purposes of the eleventh amendment.'" *Burt v. Board of Trustees*, 521 F.2d 1201 (4th Cir. 1975), *quoting from Edelman v. Jordan*, 415 U.S. 651, 667 n.12, 94 S.Ct. 1347, 1357 n.12, 39 L.Ed.2d 662 (1974).

covery of lost wages and other employment benefits, and the award of compensatory and punitive damages against the defendant board members individually. When the federal complaint and a motion for a preliminary injunction were served upon the defendant board members, they retained the Charleston law firm of DiTrapano, Mitchell, Lawson and Field to represent both the board of education as an official, collective entity and themselves individually.

The plaintiffs in the appeal before us brought an action in the Circuit Court of Lincoln County to remove the defendant members of the Lincoln County Board of Education from office on the grounds that they had improperly used county funds to pay attorneys' fees in their own defense of the federal civil rights action arising from the wrongful discharges. In addition, the plaintiffs in the removal proceeding asserted that after the U.S. District Court entered its order determining liability with regard to the three improperly discharged employees, the defendant members of the board of education voted a settlement of back pay and damages that came entirely from funds of the board of education, thus insulating the board members from personal liability. Thus, the gravamen of plaintiffs' complaint in the case before us is that the defendant board members diverted money belonging to the Lincoln County Board of Education to their own purposes in violation of *W.Va.Code*, 61–10–15 [1977] which provides:

> It shall be unlawful for any member of a county commission, overseer of the poor, district school officer, secretary of a board of education, supervisor or superintendent, principal or teacher of public schools, or any member of any other county or district board, or for any county or district officer to be or become pecuniarily interested, directly or indirectly, in the proceeds of any contract or service, or in furnishing any supplies in the contract for, or the awarding or letting of, which as such member, officer, secretary, supervisor, superintendent, principal, or teacher, he may have any voice, influence or control....

Plaintiffs maintain that violation of *Code*, 61–10–15 [1977] is a removable act under *W.Va.Code*, 6–6–7 [1923]. *Jordan v. McCourt*, 135 W.Va. 79, 62 S.E.2d 555 (1950).

The Circuit Court of Lincoln County took the case under advisement based upon the pleadings, the proceedings in the U.S. District Court, the stipulated facts, and agreed statements concerning evidence to which witnesses would testify if they were in court. Upon this record the circuit court rendered judgment for the defendants on the grounds that there was no evidence that the law firm retained by the board of education charged the board of education for services rendered to the defendants as individuals and because the court believed that the defendant board members were unaware that there was any obligation on their part to contribute individually to the ultimate settlement of the damage issue in the unlawful discharge case.

All of the proceedings below in the case under consideration occurred before either the circuit court or the parties had the benefit of our opinion in the case of *Powers v. Goodwin*, 170 W.Va. 151, 291 S.E.2d 466 (1982), and since many of the issues in this case concerning attorneys' fees and indemnification were not addressed within the structure that we outlined in *Powers* for disposing of those issues, the case is remanded for further proceedings consistent with this opinion and *Powers, supra.*

I

■ The broad statement of the law applicable to the case before us is found in syllabus points 2 and 3 of *Powers, supra,* where we said:

> 2. Where a county official incurs a loss in the discharge of his official duty in a matter in which the county has an interest, and in the discharge of a duty imposed or authorized by law and in good faith, the county has the power to appropriate funds to reimburse him, unless expressly forbidden.
>
> 3. The rules governing whether a public official is entitled to indemnifica-

tion for attorneys' fees are the same in both the civil and criminal context. In order to justify indemnification from public funds the underlying action must arise from the discharge of an official duty in which the government has an interest; the officer must have acted in good faith; and the agency seeking to indemnify the officer must have either the express or implied power to do so. The U.S. District Court spoke in its order about the defendants' "good faith" when it said:

Likewise, the Defendants are not protected by their protestations that their actions were taken in good faith. First of all, the Court finds that the terminations of the prevailing Plaintiffs could in no way be characterized as being in good faith. Even if they were, however, while the good faith defense may preclude a damage award, it is not a defense to the exaction of back pay incident to equitable relief. *Wood v. Strickland*, 420 U.S. 308 [95 S.Ct. 992, 43 L.Ed.2d 214] (1975); *Owens [Owen] v. City of Independence*, 560 F.2d 925, 940 (8th Cir. 1977).

Since, as we shall discuss in greater detail *infra*, our standard for determining "good faith" in the context of determining whether public officials should be indemnified for personal judgments or attorneys' fees is identical to the federal standard for determining "good faith" immunity from a personal judgment in 42 U.S.C. 1983 actions, ordinarily a federal district court order adjudicating the question of good faith should be given *res judicata* effect. In the case before us, however, the part of the federal court order quoted above was not dispositive of an issue then remaining before the court, namely damages.

Under 42 *U.S.C.* 1983 an entirely good-faith violation of a civil right can result in the type of equitable relief that was awarded the wrongfully discharged Lincoln County school employees—namely reinstatement with back pay. Good faith becomes relevant when a personal judgment is sought against individually-named defendants, *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), or when punitive damages are demanded against a state or local agency, *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir. 1977).[2] Consequently, while the district court spoke to the issue of good faith, that issue was not fully developed. In fact, since the order by its very terms contemplated further proceedings before a jury to determine whether damages should be awarded against individual members of the school board, obviously further testimony focusing on the issue of good faith was expected to be forthcoming.[3] Therefore, the federal court's comment concerning good faith cannot be given *res judicata* effect in this proceeding.

## II

In the *Powers* case, *supra*, we made numerous references to the concept of "good faith" without ever defining it in the context of this type of proceeding. We are

---

**2.** In *Duchesne*, 566 F.2d at 831 the court stated:
A § 1983 plaintiff's burden does not vary depending upon whether he is seeking injunctive or monetary relief; *the elements of the cause of action remain precisely the same.* In both instances he must prove that the defendant caused him to be subjected to a deprivation of constitutional rights. But, no greater burden is imposed on the plaintiff seeking money damages. The requested relief becomes relevant only in terms of whether or not the defendant is entitled to assert good faith as a defense. (The defense is, of course, only available when money damages are sought).
*See generally Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133 (1977).

**3.** The district court's order was quite specific in its contemplation of further proceedings going directly to the good faith issue. The court said:
Inasmuch as the parties are entitled to seek a jury trial on the several claims for damages from the alleged violation of the Fourteenth Amendment and 42 *U.S.C.* § 1983 rights, none may be fixed by the Court in this aspect of the proceeding, which sounds wholly in equity. See *Burt v. Board of Trustees,* 521 F.2d 1201 (4th Cir. 1975). The Plaintiffs shall inform this Court whether they desire to go to trial on their damage claims within thirty days of the entry of this Order.

now called upon to define "good faith" as that concept relates to indemnification for attorneys' fees and personal judgments. Obviously, if the defendants before us were acting in good faith, they committed no removable act under *Powers, supra,* when they reimbursed themselves for attorneys' fees.

■ In general our standard for determining whether an official has acted in good faith tracks the federal standard. Initially, we hold that an official is not acting in good faith when he knows or reasonably should know that actions taken within the scope of his official responsibility violate another's constitutional rights. However, a mere after-the-fact determination that a violation occurred does not necessarily demonstrate lack of good faith. As the Supreme Court said in *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976):

> Whenever the facts in a case are disputed, a court perforce must decide that one party's version is inaccurate. Yet it would be untenable to conclude *ipso facto* that that party had acted in bad faith. 427 U.S. at 183–84, 96 S.Ct. at 2600–01.

The problem of after-the-fact court determinations of civil rights violations is one of staggering dimensions. It is unreasonable to hold public officials personally liable for actions that are legal at the time they are taken but which subsequently become illegal as a result of a change in the law. This was made clear by the Supreme Court in *Wood v. Strickland, supra.*

> Therefore, in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within the sphere of official responsibilities would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. That is not to say that school board members are "charged with predicting the future course of constitutional law." *Pierson v. Ray,* 386 U.S.

[547] at 557 [87 S.Ct. 1213 at 1219, 18 L.Ed.2d 288]. A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith. 420 U.S. at 322, 95 S.Ct. at 1001.

The rule regarding "good faith" of public officials in the context of indemnity for attorneys' fees or personal judgments is correctly stated by C. Rhyne, in *The Law of Local Government Operations,* 1071–72 (1980) where the commentator says:

> Not only must the municipal official act sincerely and in good faith, but also with a reasonable belief that his actions are lawful. A municipal official is afforded no immunity if he knows or reasonably should know that the actions he takes within the sphere of his official responsibility violate another's constitutional rights or if he takes an action with the malicious intent to cause a deprivation of rights or injury to another. Immunity is not denied to a municipal official who takes an action in good faith involving an area of the law where the existence and contours of constitutional rights are not settled.

Furthermore, the Supreme Court stated in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980):

> After all, it is the public at large which enjoys the benefits of the government's activities, and it is the public at large which is ultimately responsible for its administration. Thus, even where some constitutional development could not have been foreseen by municipal officials, it is fairer to allocate any resulting loss to the inevitable cost of government borne by all the taxpayers, than to allow its impact to be felt solely by those whose rights, albeit newly recognized, have been violated. 445 U.S. at 655.

In the case before us it is important to note that the landmark case of *Elrod v. Burns, supra,* that articulated a constitutional right of non-policy making, non-confi-

dential, will-and-pleasure government employees to immunity from discharge for the exercise of First and Fourteenth Amendment rights was decided by the United States Supreme Court approximately one month *after* the improper discharge of the Lincoln County school personnel of concern to us in this case. Consequently, if the defendant members of the board of education reasonably believed that the political firing of non-policy making, non-confidential government employees could be lawfully accomplished based upon a longstanding body of prior law, then their motives alone do not support a finding that they acted in bad faith.

■ The one flexible criterion in any inquiry into the question of good faith concerns whether the official "had reason to know" that his actions were illegal. As the Supreme Court stated in *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980):

> As our decisions make clear, whether such immunity has been established depends on facts peculiarly within the knowledge and control of the defendant. Thus we have stated that "[i]t is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct." *Scheuer v. Rhodes*, [416 U.S.], at 247–248 [94 S.Ct. at 1691–92]. The applicable test focuses not only on whether the official has an objectively reasonable basis for that belief, but also on whether "[t]he official himself [is] acting sincerely and with a belief that he is doing right," *Wood v. Strickland, supra*, at 321 [95 S.Ct. at 1000]. There may be no way for a plaintiff to know in advance whether the official has such a belief or, indeed, whether he will even claim that he does. The existence of a subjective belief will frequently turn on factors which a plaintiff cannot reasonably be expected to know. For example, the official's belief may be based on state and local law, advice of counsel, administrative practice, or some other factor of

which the official alone is aware. 446 U.S. at 641, 100 S.Ct. at 1924.

Actual notice of the law is a comparatively simple concept; however, whether a particular official had reason to know the law is very difficult to apply. Unfortunately the personal backgrounds of public officials are so diverse as to make it almost impossible to establish one standard of "reasonable knowledge" that can be applied to all public officials. Many local officials are full-time government employees with substantial experience and access to well-trained and qualified lawyers. Others, and members of the boards of education fall into this class, are part-time, unpaid officials with little prior experience in government. As the Supreme Court stated in *Owen, supra*:

> Doctrines of tort law have changed significantly over the past century, and other notions of governmental responsibility should properly reflect that evolution. No longer is individual "blameworthiness" the acid test of liability; the principle of equitable loss-spreading has joined fault as a factor in distributing the costs of official misconduct.
>
> We believe that today's decision, together with prior precedents in this area, properly allocates these costs among the three principals in the scenario of the § 1983 cause of action: the victim of the constitutional deprivation; the officer whose conduct caused the injury; and the public, as represented by the municipal entity. The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury. The offending official, so long as he conducts himself in good faith, may go about his business secure in knowledge that a qualified immunity will protect him from personal liability for damages that are more appropriately chargeable to the populace as a whole. And the public will be forced to bear only the costs of injury inflicted by the "execution of a government's policy of custom, whether made by its lawmakers or by those whose edicts or acts may

fairly be said to represent official policy." 445 U.S. at 657, 100 S.Ct. at 1418. Consequently, the standard of reasonable knowledge applicable to any government official must be determined by the totality of the circumstances in each individual case.

## III

 In Syllabus point 2 of *Powers, supra,* we held:

> Where a county official incurs a loss in the discharge of his official duty in a matter in which the county has an interest, and in the discharge of a duty imposed or authorized by law and in good faith, the county has the power to appropriate funds to reimburse him, unless expressly forbidden.

Upon remand, the circuit court must first determine whether the defendant members of the board of education illegally discharged the school personnel in good faith, as we have defined that term above. If, indeed, the board members acted in good faith, then it is immaterial that they entered into a settlement with the aggrieved school personnel by which all of the damage issues were settled by a payment of school board funds since if any damages had been recovered against the members of the board as individuals, they would have had a right to indemnification from the board.

On the other hand, if the circuit court finds that the illegal discharges were not accomplished in good faith, as we have defined the term above, then the circuit court must further inquire whether, given the body of federal law in 1978, there was a significant likelihood that damages would have been awarded against the school board members personally rather than against the school board members in their official capacities. If there was a significant potential personal liability, the circuit court must then determine whether the settlement into which the members of the school board entered reflected an illegal diversion of school board funds for the purpose of insulating the individual defendants from personal liability.

Finally, the same principles would apply to the defendants' use of school board money to hire counsel for overall representation; however, the circuit court has already determined as a matter of fact that the board of education did not pay any attorneys' fees for the representation of the members of the board of education in their individual capacities. We see no reason to disturb that explicit ruling since all the evidence was before the court.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Lincoln County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.