*434 S.E.2d 40*

**STATE of West Virginia ex rel. H. Truman CHAFIN, Petitioner Below, Appellee,**

**v.**

**MINGO COUNTY COMMISSION, Respondent Below, Appellant.**

No. 21387.

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1993.

Decided July 22, 1993.

Millard E. Jewell, Williamson, for appellee.

Glen R. Rutledge, Pros. Atty., William H. Duty, Asst. Pros. Atty., Williamson, for appellant.

PER CURIAM:

This is an appeal by the Mingo County Commission from November 18, 1991, and January 29, 1992, orders of the Circuit Court of Mingo County which required the Appellant to reimburse the Appellee, Senator H. Truman Chafin, for attorney fees in the amount of $91,600. Having reviewed the record in this matter, we find that the Circuit Court of Mingo County did not abuse its discretion in ordering the reimbursement of $91,600. Evidence was presented by the Appellee indicating the reasonableness of the legal expenses, and the Appellant failed to introduce sufficient evidence to establish that the expenses were unreasonable. We therefore find no error and affirm.

I.

The Appellee, a member of the Mingo County Commission from January 1, 1979, through December 31, 1982, was indicted on April 7, 1988, and charged with bribery in connection with the resignation and appointment of the Sheriff of Mingo County.[1]

1. This alleged scheme has been referenced as the "Sheriff's sale" and will hereinafter be referenced as such in this opinion. The Appellee was charged with the following:

unlawfully and feloniously accept[ing] or agree[ing] to accept, directly or indirectly, from Charles Edward Hilbert to Johnnie M. Owens on his behalf and upon behalf of Steve Adkins and Rastie Runyon, a pecuniary benefit as consideration for the acceptance of the resignation of Johnnie M. Owens and the ap-

pointment of Charles Edward Hilbert as Sheriff of Mingo County in that he agreed not to render official action against the approval of the resignation of Johnnie M. Owens as Sheriff, the approval of Charles Edward Hilbert as Sheriff, and the creation of the position of Administrative Assistant for the Sheriff's Department, and the subsequent appointment of Johnnie M. Owens thereto, against the peace and dignity of the State.

The Appellee procured the services of attorney Stanley Preiser in the defense of those charges. By order entered September 22, 1988, the indictment was determined to be void based upon the improper constitution of the grand jury, and the indictment was dismissed by the Honorable W. Craig Broadwater, Special Judge. On October 26, 1989, the Honorable Frederick P. Stamp, Special Prosecutor for Mingo County, informed the Circuit Court of Mingo County, the Honorable Ronald E. Wilson presiding as Special Judge, that there was insufficient evidence to warrant presentation of the matter to the grand jury.

The Appellee thereafter requested the Mingo County Commission to reimburse him in the amount of $91,600 for legal expenses incurred from April 13, 1988, through January 30, 1989, relating to the defense of the charges against him. The Appellant declined to reimburse the Appellee and suggested that he file a writ of mandamus.

On June 25, 1991, the Appellee filed a petition for a writ of mandamus in the Circuit Court of Mingo County. The matter was heard on September 6, 1991,[2] the Honorable Ned Grubb presiding as special judge. Judge Grubb determined that the charges of $91,600 were reasonable and necessary under the circumstances and entered an order stating that conclusion on November 18, 1991. Despite a November 26, 1991, motion by the Appellant to set aside the November 18, 1991, order, it was affirmed by an order dated January 29, 1992. The Appellant now seeks relief in this Court and alleges that the Appellee's legal expenses were unreasonable.

## II.

■ As explained in syllabus point 3 of *Powers v. Goodwin*, 170 W.Va. 151, 291 S.E.2d 466 (1982),

The rules governing whether a public official is entitled to indemnification for attorneys' fees are the same in both the civil and criminal context. In order to justify indemnification from public funds the underlying action must arise from the discharge of an official duty in which the government has an interest; the officer must have acted in good faith; and the agency seeking to indemnify the officer must have either the express or implied power to do so.

It is important to note at the outset that the Appellant raises no issue concerning any of these factors. The only issue raised by the Appellant is the reasonableness of the fees. The Appellant concedes that the Appellee "had the right to hire the attorney of his choice ..." but maintains that it should be responsible only for "reasonable" fees. Consequently, the only matter for our determination is whether the attorney fees of $91,600 were in fact reasonable.

■ In *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986) we examined the issue of reasonableness of attorney fees and enumerated several factors to be considered in determining whether an attorney fee is reasonable.

Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional

---

**2.** The only witness to actually testify at the hearing was H. Truman Chafin. Mr. Steve Adkins was available to testify, but the parties by stipulation made his attorney's fees and time records a part of the record. The records of Mr. Chafin's attorney fees and their time records were also introduced. No other evidence was presented.

relationship with the client; and (12) awards in similar cases.

*Id.* at 191, 342 S.E.2d at 157.

When the Appellee was initially charged for the legal services of Stanley Preiser and his law firm, the bill totaled $186,-242.92, including $172,226.25 for attorney fees and $14,016.67 for expenses. The Appellee then negotiated the charges and ultimately did pay $91,600 of the original bill. During the September 6, 1991, hearing, the Appellee explained that his attorneys faced the monumental task of reviewing everything the grand jury had done. His attorneys investigated testimony before the grand jury for a period of years where testimony was not indexed or filed in any logical manner. That reconstruction of grand jury records was necessary to address the alleged improprieties of impanelling the grand jury, and those improprieties eventually formed the basis for the dismissal of the indictment against the Appellee. To the extent that the original $186,-242.92 bill consisted of unreasonable fees or improperly utilized time, the Appellee maintains that the reduction to $91,600 reflects the Appellee's recognition of some unreasonable charges and his successful attempt to reduce those charges to a reasonable amount.

In response to the Appellee's assertion regarding the reasonableness of the attorney fees, the Appellant introduced records of legal expenses incurred by Mr. Steve Adkins, another Mingo County commissioner indicted for the same criminal activity for which the Appellee was indicted. The Appellant asserted that although the charges against Mr. Adkins were incurred in connection with three separate charges, the fees attributable to each could be separated for comparison to the Appellee's case.[3] Thus, while Mr. Adkins incurred over $170,000 in total attorney fees, represented by the law firms of Kay, Casto & Chaney and King, Betts & Allen, only $36,-000 of those total fees was allegedly attributable directly to the "Sheriff's sale" inci-

dent for which the Appellee was also indicted. Through that means, the Appellant attempted to demonstrate the unreasonableness of the Appellee's $91,600 in attorney fees compared to Mr. Adkins' $36,000 in attorney fees for defense of the same allegations.

That argument fails on several levels. First, the Adkins case was not identical to the present case. Mr. Adkins was indicted ten times on felony charges and was a defendant in a civil removal proceeding. He was tried and acquitted on the charges arising from the "Sheriff's sale", and all other litigation was dismissed prior to trial. Mr. Adkins was then reimbursed by the Appellant in the amount of $171,639 for attorney fees and expenses. The approximate $36,000 to which the Appellant compares the $91,600 bill in this case was the amount attributed to the "Sheriff's sale" representation and was submitted only after another county commissioner had been reimbursed for fees regarding flood indictments and removal proceedings and only upon the insistence of segregation of fees by the Appellant's counsel. The differences between the Adkins case and the present one make it extremely difficult to compare the two cases, the amount of legal work which was required, or the fees charged.

In light of the various factors which must be considered in such an attempted comparison, it is a great oversimplification for the Appellant to argue that the $36,000 figure in the Adkins case is comparable to the $91,600 in the present case. Moreover, even if we accepted that argument, the Appellant cannot hope to base its entire theory of unreasonableness upon a comparison of the fees in the Adkins case to the fees in this case. This Court's decision in *Aetna Casualty* contemplates inquiry into reasonableness based upon a myriad of factors. The Appellant, however, relied almost exclusively upon the twelfth factor enumerated in *Aetna Casualty*, dealing with attorney awards in similar cases, and virtually ignored the other factors. *See*

3. The three categories into which allegations against Mr. Adkins could be divided are as follows: indictments involving expenditures of

flood monies, the civil removal proceeding, and the "Sheriff's sale" indictment.

176 W.Va. at 191, 342 S.E.2d at 157. Even in its brief, the Appellant addresses only four of the *Aetna Casualty* factors, time and labor required, customary fees, experience, reputation, and ability of attorneys, and awards in similar cases. *Id.* The Appellant challenges the reasonableness of the Appellee's attorney fees; yet the Appellant presented no evidence at the hearing, other than the bills from the Adkins case, to substantiate its claim of unreasonableness. Based upon the evidence presented at the hearing, we cannot conclude that the lower court abused its discretion in awarding the Appellee reimbursement in the amount of $91,600. The lower court was familiar with the circumstances of both the Adkins case and the Appellee's case and was in a position most capable of adjudging the reasonableness of the Appellee's fees. We find no error in the decision to order reimbursement in the amount of $91,600.

■ We also briefly address the Appellee's cross-assignments of error. He contends that the lower court erred in its failure to award prejudgment interest and attorney fees relating to the prosecution of this claim against the Mingo County Commission for reimbursement. At the direction of the lower court, both parties submitted briefs to the lower court on these issues. The lower court adopted the Appellant's position that the Appellee was not entitled to prejudgment interest or attorney fees in connection with this matter. With regard to the Appellee's contention of entitlement to prejudgment interest, West Virginia Code § 56–6–31 (1981) governs. It provides that prejudgment interest shall be available on "lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, *as determined by the court.*" W.Va.Code § 56–6–31. (emphasis supplied). We are not convinced that the lower court erred in determining that the Appellee's expenditures did not constitute "similar out-of-pocket expenditures" and therefore did not qualify as an award entitling the Appellee to prejudgment interest. We have discussed the propriety of awarding prejudgment interest in a multitude of situations. In *Bond v. City of Hunting-*

*ton,* 166 W.Va. 581, 276 S.E.2d 539 (1981), for example, we stated that prejudgment interest has traditionally been applicable only to contract actions and expanded that applicability to wrongful death actions. In *Kirk v. Pineville Mobile Homes, Inc.,* 172 W.Va. 693, 310 S.E.2d 210 (1983), we permitted prejudgment interest on loss or damage to real and personal property. In *O'Neal v. Peake Operating Co.,* 185 W.Va. 28, 404 S.E.2d 420 (1991), we explained that damages representing the value of the right to use land were liquidated damages and therefore entitled to prejudgment interest. We do not perceive the Appellee's situation as one in which we are compelled to further expand the availability of prejudgment interest.

■ The Appellee also contends that the lower court erred by failing to award attorney fees for the prosecution of this action against the Appellant. The lower court's decision regarding an award of attorney fees, however, was within the sound discretion of that court. In syllabus point 5 of *Graf v. Frame,* 177 W.Va. 282, 352 S.E.2d 31 (1986), we explained that " '[o]rdinarily, in mandamus proceedings, costs [and reasonable attorney fees] will not be awarded against a public officer who is honestly and in good faith endeavoring to perform his duty as he conceives it to be.' *Nelson v. West Virginia Public Employees Insurance Board,* [171] W.Va. [445], [450], 300 S.E.2d 86, 91 (1982)." While the Appellee contends that the Appellant's denial of reimbursement was arbitrary, capricious, and willful, we find that the Mingo County Commission had a legitimate basis for challenging the reasonableness of the attorney fees in question. The fact that the Commission has been unsuccessful in that challenge does not necessitate an award of attorney fees for the Appellee's attempt to collect the reimbursement to which he was entitled.

Based upon the foregoing, we affirm the decision of the lower court.

Affirmed.