482 S.E.2d 652

**STATE of West Virginia ex rel. Larry WARNER, Appellant,**

v.

**The JEFFERSON COUNTY COMMISSION,**
Appellee.

**No. 23106.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 25, 1996.

Decided Dec. 13, 1996.

Leonard Knee, Bowles Rice McDavid Graff & Love, Charleston, for Appellant.

Herschel H. Rose, III, Rose & Atkinson, Charleston, for Appellee.

RECHT, Judge: [1]

Larry Warner, the petitioner below and the appellant here, was a duly appointed member of the board of directors of the Jefferson County Solid Waste Authority (hereinafter "JCSWA"), who was indicted and subsequently acquitted of alleged criminal violations associated with the operation of the Jefferson County Landfill. In his successful defense of a multiple count indictment returned against him, he incurred legal fees and expenses of $95,345.56. The appellant filed a writ of mandamus in the Circuit Court of Jefferson County seeking to compel the Jefferson County Commission (hereinafter "County Commission") to pay these fees and

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

expenses. The Circuit Court of Jefferson County denied the writ concluding that the County Commission had no legal duty to pay these fees and expenses. This appeal followed. Because we find that the circuit court erroneously concluded that the County Commission had no legal duty to pay these fees and expenses, we reverse and remand for further proceedings.

## I.

## BACKGROUND

Our discussion begins with an analysis of West Virginia's statutory scheme establishing a comprehensive system for the collection and disposal of solid waste and the role of the county commissions in that scheme.

Beginning in 1955, the legislature delegated to each of the county commissions the responsibility for the effective and efficient collection and disposal of solid waste. As an adjunct to that delegation of responsibility, the legislature empowered the county commissions to create and establish county solid waste authorities to perform the tasks necessary for the effective and efficient collection and disposal of solid waste. W. Va.Code 7–16–1 to 7–16–8 (1977) (authorizing every county commission to create and establish a county solid waste authority to carry out the powers and duties relating to the necessary, dependable, effective and efficient disposal of solid waste).

In 1988, the legislature determined that the more effective and efficient manner to address the collection and disposal of solid waste could be accomplished not through the county commissions directly, but by county solid waste authorities working in conjunc-

tion with the county commissions.[2] W.Va. Code 22C–4–1 *et seq.*[3]

The three sections of legislation critical to the resolution of this appeal are: W. Va.Code 22C–4–3(b) (relating to the board of directors and its composition); W. Va.Code 22C–4–7(b) (relating to the payment of expenses incurred by the county solid waste authorities); and W. Va.Code 22C–4–3(a) and –5 (relating to the transfer of the county commission's ownership, operation and maintenance of landfills to the county solid waste authorities).

We know from this record that the Jefferson County Commission owned and operated the county landfill prior to 1989, and in compliance with W. Va.Code 22C–4–3, that ownership was transferred from the County Commission to the JCSWA sometime in 1989.

Although the legislature established this comprehensive solid waste management system operating through the county solid waste authorities, it did not remove county commissions from an active participation in the operation and management of the authorities. For example, a county solid waste authority consists of five members of a board of directors and two of those five members are selected by the county commission. W. Va. Code 22C–4–3 (1994).[4] Additionally, the county commission is responsible for the payment of expenses necessary to the operation of the county solid waste authority, including secretarial and clerical assistance, office supplies and general administrative expenses. W. Va.Code 22C–4–7 (1994).

It is against this backdrop that we analyze the appellant's request for payment of legal fees and expenses.

**2.** In addition to creating county solid waste authorities, the legislature developed a system for the establishment of regional solid waste authorities which are not relevant to this discussion. *See* W. Va.Code 22C–4–4 (1994).

**3.** This initial statutory scheme was codified at W. Va.Code 20–9–1 to –13 (1988) and has evolved into the establishment of the current system of county solid waste authorities found in chapter 22C, article 4, which became effective in 1994, and vested the county solid waste authorities with additional powers principally relating to

bonding authority. The redesignation of the statutory citation and the expansion of the county solid waste authority's power is not critical to the discussion in this case. In this opinion, we will refer to the statute as it is currently classified.

**4.** Each county solid waste board of directors is composed of two appointees selected by a county commission, one appointee selected by the Division of Environmental Protection, one from the Public Service Commission, and one from the county soil conservation district.

## II.

### FACTS

The appellant was appointed by the Jefferson County Commission to the board of directors of the JCSWA in 1989, the year that the JCSWA began operating the Jefferson County Landfill (hereinafter "Landfill"). Eventually the appellant was elected chairman of the board of directors and he held that position until 1991, when he resigned. The appellant did not receive compensation for his services during his tenure as both member and chairman; however, the statute did allow for reimbursement of his actual expenses incurred during the discharge of his duties.[5]

The Landfill was eventually closed by the Division of Environmental Protection, and in 1992, the JCSWA filed a Petition in Bankruptcy in the United States Bankruptcy Court for the Northern District of West Virginia.[6]

On April 22, 1992, the appellant was indicted by the grand jury of Jefferson County upon a forty-nine count indictment charging violations relating to the method and manner by which the appellant was responsible for the operation and maintenance of the Landfill.[7] The charges included five counts of falsifying the books of account of the JCSWA under W. Va.Code 61–3–22 (1923); four counts of failing to collect solid waste assessment fees pursuant to W. Va.Code 20–5F–5a (1991)(repealed; amended and currently codified at W. Va.Code 22–15–11 (1994)) & 11–9–6 (1984); four counts of willful failure to maintain records or supply information as an officer of the JCSWA under W. Va.Code 20–5F–5a (1991) (repealed; amended and currently codified at W. Va.Code 22–15–11 (1994)) & 11–9–8 (1984); four counts of filing a false or fraudulent return as an officer of JCSWA under W. Va.Code 20–5F–5a (1991)(repealed; amended and currently codified at W. Va.Code 22–15–11 (1994)) & 11–9–10 (1984); and twenty-eight counts of willful or negligent violation of the Solid Waste Management Act under W. Va.Code 20–5F–6 (1991) (repealed; amended and currently codified at W. Va.Code 22–15–15 (1994)).

According to the appellant's Petition for Writ of Mandamus filed in the circuit court, the root of all criminal charges was that the appellant allegedly failed to report and account properly for shredded tires used by the JCSWA. None of the charges alleged that the appellant personally profited in any way from these crimes. Rather, the appellant, in consultation with counsel, determined that the JCSWA could accept used tires, have the tires shredded and then use the tires to cover the landfill on a daily basis as a prophylactic measure to prevent problems such as odors, access to the solid waste by vermin and vectors, and the blowing of waste.[8] The JCSWA used these shredded tires without reporting the usage of the tires or paying the appropriate fees for their use. As a result, the grand jury charged that the Solid Waste Management Act was violated.

5. W. Va.Code 22C–4–3 (1994) provides, in pertinent part:

> The members of the board shall receive no compensation for their service thereon but shall be reimbursed for their actual expenses incurred in the discharge of their duties.

6. This record does not reveal why the Landfill was closed or what financial difficulties occurred that would give rise to protection under the bankruptcy laws of the United States. The causes of the closure and the filing of the Petition in Bankruptcy and who was responsible for those causes may be relevant in the ultimate resolution of this case at the final hearing following remand.

7. In January of 1992, the Kanawha County grand jury indicted the appellant on three misdemeanor charges relating to the alleged improper reporting of shredded tires on landfill tonnage reports submitted by the Landfill to the West Virginia Department of Natural Resources. These charges were subsequently dismissed by the prosecuting attorney of Kanawha County.

8. The appellant allegedly sought approval from the Division of Environmental Protection ("DEP") to use shredded tires as daily cover. The DEP approved the use of shredded tires as daily cover so long as the tires were counted in the monthly tonnage of the Landfill and the solid waste assessment fees were paid. The appellant apparently deferred to JCSWA's counsel, who advised that tires are recycled material and therefore, are not solid waste and need not be included in the Landfill's tonnage. In reliance of this advice, the JCSWA did not report the usage of tires as daily cover or pay any fees associated with the use of shredded tires.

All charges in the indictment were presented to a petit jury on August 10, 1993. At the conclusion of the State's case, the trial court granted the defendant's motion for a judgment of acquittal pursuant to West Virginia Rule Criminal Procedure 29(a) as to some of the counts in the indictment because the evidence was insufficient to sustain a conviction.[9] At the conclusion of the defendant's case, the trial court granted a motion for judgment of acquittal pursuant to W. Va. R.Crim. Proc. 29(a) as to all of the remaining counts because the evidence was insufficient to sustain a conviction.

Following the entry of the Judgment of Acquittal, the appellant submitted an invoice to the County Commission in the amount of $95,345.56 representing legal fees and expenses incurred in the defense of his criminal prosecution. The County Commission refused to pay any portion of these legal fees and expenses, resulting in the appellant filing a writ of mandamus in the Circuit Court of Jefferson County. The circuit court denied the relief sought in the petition on the ground that the County Commission had no legal duty to pay these fees and expenses. This appeal followed.

## III.

### STANDARD OF REVIEW

■ Three elements must coexist to entitle one to relief in mandamus: (1) the petitioner must have a clear legal right to the relief sought; (2) the person against whom the relief is sought must have a clear legal duty to perform the act requested; and (3) the petitioner must have no other adequate remedy. Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

The circuit court concluded that the County Commission had no clear legal duty to pay the appellants legal fees and therefore denied any relief sought in mandamus.

9. W. Va. R.Crim. P. 29(a) provides, in pertinent part:

 The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in

■ Our standard of appellate review of a circuit court's decision to refuse to grant relief through an extraordinary writ of mandamus is *de novo*. See Syllabus Point 1, *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576 (1995)(granting relief through an extraordinary writ of mandamus is reviewed *de novo*) and *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996).

## IV.

### DISCUSSION

The trial court did not address the two predicate elements in mandamus of a clear legal right and the absence of another adequate remedy, and confined its decision to the absence of a clear legal duty on the part of the County Commission.

Because this matter must be remanded for a full hearing it would be appropriate to assist the trial court in addressing all three elements which must coexist before relief can be granted in mandamus.

### A.

### *Is there a clear legal right?*

The first inquiry to address is whether our law provides the appellant with a clear legal right to reimbursement for his legal fees incurred during his successful defense of a criminal prosecution arising from acts performed during the discharge of his official duties as chairman of the board of directors of the JCSWA.

In *Powers v. Goodwin* we had occasion to formulate the criteria for a public official's entitlement to indemnification for lawyer's fees and expenses from public funds in either a civil or criminal context. Syllabus Point 3, *Powers v. Goodwin*, 170 W.Va. 151, 291 S.E.2d 466 (1982); *See also Dyke v. City of Parkersburg*, 191 W.Va. 418, 446 S.E.2d 506 (1994). The criteria contained in *Powers* are:

 The rules governing whether a public official is entitled to indemnification for

the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

attorneys' fees are the same in both the civil and criminal context. In order to justify indemnification from public funds the underlying action must arise from the discharge of an official duty in which the government has an interest; the officer must have acted in good faith; and the agency seeking to indemnify the officer must have either the express or implied power to do so.

Syllabus Point 3, *Powers v. Goodwin*, 170 W.Va. 151, 291 S.E.2d 466 (1982); *see also Powers* at Syllabus Point 2.

The appellant maintains that he satisfies all the requirements set out in *Powers*. He contends that he meets the first requirement because he is a county official (chairman of the JCSWA) who incurred a loss (incurring legal fees and expenses in the defense of criminal charges) for acts performed in a matter in which the county has an interest (managing the operations of the Landfill), and in the discharge of a duty imposed or authorized by law (W. Va.Code 22C–4–3 and –7 (1994) expresses the duties of JCSWA board members).

The appellant next asserts that he acted in good faith in the discharge of his official duties which resulted in the criminal indictments. Syllabus Point 2, *Martin v. Mullins*, 170 W.Va. 358, 294 S.E.2d 161 (1982), describes the standard for reviewing "good faith" for the purpose of indemnifying a public official for attorneys' fees incurred in defending a law suit:

> In general our standard for determining whether a public official acted in "good faith" for the purposes of indemnification for attorneys' fees and personal judgments is identical to the federal standard for determining whether a public official is entitled to "good faith" immunity in a federal civil rights suit. Consequently, we adopt the standards outlined in *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) and *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973)[sic] for determining whether a public official "should reasonably have known"

that his conduct was illegal. It is the existence of reasonable grounds for the belief that the official's conduct was legal formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for good faith indemnification. The applicable test focuses not only on whether the official has an objectively reasonable basis for that belief, but also on whether the official himself is acting sincerely and with a belief that he is doing right. The official's belief may be based on state and local law, advice of counsel, administrative practice, or some other factor of which the official alone is aware.

Syllabus Point 2, *Martin v. Mullins*, 170 W.Va. 358, 294 S.E.2d 161 (1982).

Because the circuit court did not address the criteria formulated in *Powers*, the trial court after remand will have to determine whether the appellant did indeed incur a loss in the discharge of his official duties in a matter in which the county has an interest and whether he acted in good faith. Each of these elements requires a full factual development and we express no view as to whether the appellant can or cannot satisfy his burden under *Powers*.

The final factor in *Powers* requires an analysis of whether the agency being asked to indemnify the public officer (in this case the Jefferson County Commission) has either the express or the implied power to do so. This factor can also be expressed in terms of whether the County Commission has a clear legal duty to pay the appellant's legal fees and expenses, which we will now discuss.

## B.

### *Is there a Clear Legal Duty?*

The legislative scheme established by the legislature creates a symbiosis between the Jefferson County Commission and the Jefferson County Solid Waste Authority, designed to achieve the common goal of protecting and preserving the health and safety of the citizens of Jefferson County.[10] The

---

**10.** The recognition of the symbiotic relationship between the county commission and the JCSWA

is more than a sufficient nexus between the two

legislature has expressed the financial tether between the County Commission and the JCSWA in W. Va.Code 22C–4–7(b)(1994),[11] wherein the County Commission is required to pay for secretarial and clerical assistance, office supplies and general administrative expenses. The County Commission also has the ability to participate in the governance of the JCSWA through the appointment of two of the members of the JCSWA pursuant to W. Va.Code 22C–4–3 (1994).

 We can reach no other conclusion than that as a matter of law the Jefferson County Commission has a duty and responsibility of financially subsidizing the functions of the JCSWA if for no other reason than the interrelationship between these two public agencies dedicated to a common goal of collecting and disposing of the county's solid waste.[12] A part of this financial subsidy is that the payment of general administrative expenses can include reasonable legal fees and expenses. W. Va.Code 22C–4–7(b) (1994). Because of this financial responsibility the County Commission has, at the very least, the implied power to pay the appellant's reasonable legal fees and expenses, provided that the appellant satisfies all of the other requirements in *Powers*.

### C.

### *Is there any other Remedy?*

Providing that the appellant is able to factually satisfy all of the elements of *Powers* and recognizing that the County Commission does have a clear legal duty to pay legal fees and expenses, the appellant has no remedy other than mandamus to compel the County Commission to exercise its nondiscretionary duty.[13] Syllabus Point 3, *Delardas v. County Court of Monongalia County*, 155 W.Va. 776, 186 S.E.2d 847 (1972) ("Mandamus is a proper proceeding by which to compel a public officer to perform a mandatory, nondiscretionary legal duty").

## V.

## CONCLUSION

Because the Jefferson County Commission has, at the very least, the implied power to pay the appellants legal fees and expenses as general administrative expenses within W. Va.Code 22C–4–7(b) (1994), then providing that the appellant satisfies the remaining three-prong test of *Powers v. Goodwin*, 170 W.Va. 151, 291 S.E.2d 466 (1982), there is a clear legal duty on the part of the Jefferson County Commission to pay the appellant's reasonable legal fees and expenses.

This case is remanded to the Circuit Court of Jefferson County for further proceedings consistent with this opinion.

Reversed and remanded.

---

agencies, contrary to the contention of the county commission that no such nexus exists.

**11.** W. Va.Code 22C–4–7(b)(1994) provides:

The expenses of any county solid waste authority incurred for necessary secretarial and clerical assistance, office supplies and general administrative expenses, in the development of the litter and solid waste control plan under section eight [§ 22C–4–8] of this article and to provide solid waste collection and disposal services under this article shall be paid by the county commission from the general funds in the county treasury to the extent that such expenses are not paid by fees, grants and funds received by the authority from other sources. The county commission has the authority to determine the amount to be allocated annually to the authority.

**12.** *See* W. Va.Code 22C–4–1 (1994) which states, in pertinent part:

[I]t is the purpose of the Legislature to protect the public health and welfare by providing for a comprehensive program of solid waste collection, processing, recycling and disposal to be implemented by state and local government in cooperation with the private sector. The Legislature intends to accomplish this goal by establishing county and regional solid waste authorities throughout the state to develop and implement litter and solid waste control plans.

**13.** Another element beyond those recited in *Powers* which the appellant must satisfy for complete relief is proof that the fees and expenses were reasonable. *State ex rel. Chafin v. Mingo County Comm'n*, 189 W.Va. 680, 434 S.E.2d 40 (1993).